# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **TERESA K. FARMER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06cv00038 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the decision of the Commissioner denying benefits and remand the case to the ALJ for further consideration.

*I. Background and Standard of Review*

Plaintiff, Teresa K. Farmer, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423. (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987.) Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966.) "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642.)

The record shows that Farmer filed a prior application for DIB on May 1, 2001, alleging disability as of January 28, 2000. (Record, ("R.") at 34-36). This claim was denied initially on July 5, 2001, and was pursued no further. (R. at 14.) Farmer protectively filed her current application for DIB on October 26, 2004, alleging disability as of February 28, 2000, based on two back surgeries to correct ruptured discs and resulting nerve damage. (R. at 285-89, 292, 295.) The claim was denied initially and upon reconsideration.[1] (R. at 14.) Farmer then requested a hearing before an administrative law judge, ("ALJ"). (R. at 33.) The ALJ held a hearing on October 7, 2005, at which Farmer was represented by counsel. (R. at 250-84.)

By decision dated October 27, 2005, the ALJ denied Farmer's claim. (R. at 14-20.) The ALJ found that Farmer last met the insured status requirements of the Act for

---

[1]Neither the initial or reconsideration denial is contained in the administrative record.

-2-

Case 1:06-cv-00038-PMS   Document 16   Filed 01/22/07   Page 2 of 14   Pageid#: 60

DIB purposes on September 30, 2001, but not thereafter.[2] (R. at 17.) She further found that Farmer had not engaged in substantial gainful activity at any time relevant to the decision. (R. at 17.) The ALJ found that Farmer suffered from a severe impairment, namely a history of back disorders, but she found that Farmer did not have an impairment or combination of impairments listed at, or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, through September 30, 2001. (R. at 17-18.) The ALJ found that Farmer had the residual functional capacity to perform light work[3] diminished by an ability to frequently lift items weighing less than 10 pounds, a sit/stand option, an ability to occasionally bend, stoop, kneel, crouch and crawl and an inability to climb stairs or ladders. (R. at 18.) The ALJ further noted that, due to the pain causing a mild reduction in Farmer's concentration, Farmer was limited to simple tasks. (R. at 18.) The ALJ found that Farmer was able to perform her past relevant work as a cleaner and a home attendant. (R. at 19.) Thus, the ALJ found that Farmer was not under a disability as defined by the Act and was not eligible for benefits at any time through September 30, 2001, the date she was last insured. (R. at 20.) *See* 20 C.F.R. § 404.1520(f) (2006).

After the ALJ issued her opinion, Farmer pursued her administrative appeals, (R. at 9), but the Appeals Council denied her request for review. (R. at 5-8.) Farmer

---

[2]Because Farmer did not pursue the denial of her prior claim dated July 5, 2001, and because the ALJ determined that Farmer's date last insured was September 30, 2001, the issue currently before this court is whether substantial evidence supports the ALJ's decision that Farmer was not disabled during the period from July 6, 2001, to September 30, 2001.

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2006).

-3-

then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006.) The case is before this court on the Commissioner's motion for summary judgment filed August 31, 2006.[4]

## *II. Facts*

Farmer was born in 1956, (R. at 256), which, at the time of the ALJ's hearing, classified her as a "younger person" under 20 C.F.R. § 404.1563(c) (2006). She has a ninth-grade education.[5] (R. at 257.) Farmer has past relevant work experience in elderly home care, cleaning houses and operating sewing machines. (R. at 53, 296.)

At her hearing, Farmer testified that she had not worked as a home and office cleaner since February 28, 2000. (R. at 257.) She testified that her back pain progressively worsened in August and September 2001. (R. at 264.) Farmer testified that, following her second back surgery in February 2000, Dr. Kelly restricted her from bending and lifting items weighing more than five pounds. (R. at 265.) She stated that those restrictions remained on her during August and September 2001. (R. at 265.) Farmer testified that she attempted to perform housework approximately two months after surgery, but it made her back pain worse, causing her to stop performing housework approximately eight months following her February 2000 surgery. (R. at 270.) Nonetheless, Farmer testified that she helped care for her elderly grandmother

---

[4]Farmer did not file a motion for summary judgment.

[5]Although her Disability Report indicates that Farmer completed the tenth grade, she testified that she had a ninth-grade education. (R. at 50, 257.)

-4-

in 2001. (R. at 258.)

Jean Hambrick, a vocational expert, also was present and testified at Farmer's hearing. (R. at 274-83.) Hambrick classified Farmer's work as a home attendant, as performed, as light and unskilled and as a cleaner as light and unskilled. (R. at 277.) Hambrick was asked to consider a hypothetical individual of Farmer's age, education, and work experience as of September 30, 2001, who could perform light work diminished by a mild reduction in concentration at times, who could only occasionally climb stairs, balance, kneel, crouch, crawl and stoop, who could never climb ladders and who would require a sit/stand option. (R. at 277-78.) Hambrick testified that such an individual could perform jobs existing in significant numbers in the national economy, including those of a personal attendant. (R. at 281.) Hambrick was then asked to assume the same facts included in the first hypothetical in addition to difficulty balancing and a constant need to lie down to relieve back pain. (R. at 282-83.) Hambrick testified that there would be no jobs available for such an individual. (R. at 283.)

In rendering her decision, the ALJ reviewed records from Dr. David L. Kelly Jr., M.D.; Basic Essential Spinal Care Center; Todd Chiropractic; Carilion Medical Associates; Dr. Frank M. Johnson, M.D., a state agency physician; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. John W. Carmody, M.D.; Twin County Regional Hospital; Dr. Linda Sue Cheek, M.D.; Dr. Randall Hays, M.D., a state agency physician; and Galax Chiropractic Health Center. Farmer's counsel also submitted medical records from Virginia Highlands Orthopaedic Spine Center to the Appeals

Council.[6]

The record reveals that Farmer underwent a lumbar laminectomy at the L5-S1 level on the left side with removal of a disc, performed by Dr. David L. Kelly Jr., M.D., on February 7, 2000. (R. at 97, 102.) Farmer testified that she also had undergone a previous back surgery for a ruptured disc in 1996. (R. at 258-59.)

On June 19, 2001, Farmer saw Dr. Linda Sue Cheek, M.D., for a consultative examination at the request of Disability Determination Services. (R. at 189-94.) Farmer stated that she had a "weak back," pain in her left leg with numbness and occasional right leg pain and pain in the bottom of the right foot. (R. at 189.) She estimated her pain on average as a six on a 10-point scale, with 10 being the worst pain. (R. at 189.) Farmer further reported that her legs became weak, requiring her to lie down. (R. at 188.) She reported difficulty rising from a bent position. (R. at 189.) Farmer estimated that she could sit for one to two hours without back pain. (R. at 189.) At the time of this consultation, Farmer stated that she was taking Vicodin and Darvocet. (R. at 190.)

Dr. Cheek noted that Farmer was alert and fully oriented and in no apparent distress. (R. at 190.) Her mood was euthymic, and her thought and speech were coherent. (R. at 190.) A physical examination revealed tenderness around the sacrum.

---

[6]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-8), the court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

(R. at 190.) No clubbing, cyanosis or edema were noted in the extremities, and Farmer's joints were normal with no enlargement or tenderness. (R. at 191.) Range of motion of the cervical spine and dorsolumbar spine was normal, while range of motion of the shoulder was decreased on forward flexion. (R. at 191.) Flexion of the left hip also was decreased. (R. at 191.) The knee joints, ankle joints and hands and finger joints were normal. (R. at 191.) Farmer's neurological functioning was grossly intact, with normal deep tendon reflexes. (R. at 191.) Her sensory functioning was intact and she exhibited full motor strength. (R. at 191.) Dr. Cheek noted weak gluteus minimus when raising the left foot. (R. at 191.) Dr. Cheek concluded that Farmer had signs and symptoms of weak gluteal muscles that could cause back pain. (R. at 191.) She further noted sciatic nerve pressure at the L5 level of the spine. (R. at 191.) Dr. Cheek opined that Farmer could occasionally lift items weighing up to 20 pounds and frequently lift items weighing less than 10 pounds, especially if it involved lifting and stooping. (R. at 191-92.) She further opined that Farmer could stand and walk approximately two hours each day and that she must alternate between sitting and standing. (R. at 192.) Cheek also concluded that Farmer was limited in her ability to push and/or pull with the lower extremities due to the propensity for her legs to give out. (R. at 192.) Dr. Cheek opined that Farmer could occasionally climb, balance, kneel, crouch, crawl and stoop. (R. at 192.)

On June 22, 2001, Dr. Randall Hays, M.D., a state agency physician, completed a physical assessment, indicating that Farmer could occasionally lift and/or carry objects weighing up to 20 pounds, frequently lift and/or carry objects weighing less than 10 pounds, stand and/or walk for at least two hours in an eight-hour workday and sit about six hours in an eight-hour workday. (R. at 195-203.) Dr. Hays opined that

Farmer was limited in her ability to push and/or pull with her lower extremities. (R. at 196.) He further found that Farmer could frequently climb ramps and stairs and balance, occasionally stoop and kneel, but never climb ladders, ropes or scaffolds, crouch or crawl. (R. at 197.) Dr. Hays imposed no manipulative, visual or communicative limitations. (R. at 198-99.) He concluded that Farmer should avoid all exposure to hazards such as machinery and heights. (R. at 199.) Dr. Hays opined that Farmer retained the functional capacity for sedentary work.[7] (R. at 200.)

Farmer was seen at Todd Chiropractic on September 28, 2001, with complaints of neck pain and low back pain for the previous five days. (R. at 123-24.) Farmer noted that although she had experienced similar problems in the past, the type of pain was different. (R. at 123.) She reported that the pain varied from dull to sharp, and she noted that the severity ranged from moderate to severe. (R. at 123.) Farmer reported that the pain had become progressively worse and was aggravated by work, bending, lifting and quick movement. (R. at 123.) She stated that lying down on her side and applying ice helped to alleviate the pain. (R. at 123.) Farmer reported headaches two to three times per week. (R. at 123.) She was diagnosed with multiple subluxations of the cervical spine, subluxation of the thoracic spine and subluxation of the lumbar spine. (R. at 124.)

On January 10, 2005, Dr. Frank M. Johnson, M.D., a state agency physician, completed a physical assessment, indicating that, as of September 30, 2001, Farmer

---

[7]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. *See* 20 C.F.R. § 404.1567(a) (2006).

could perform light work. (R. at 151-56.) Dr. Johnson opined that Farmer could occasionally climb. (R. at 153.) He imposed no manipulative, visual, communicative or environmental limitations. (R. at 153-54.) Dr. Johnson opined that Farmer suffered from degenerative disc disease. (R. at 156.) He found Farmer's subjective allegations to be only partially credible. (R. at 156.) Dr. Johnson's findings were affirmed by Dr. Richard M. Surrusco, M.D., another state agency physician, on February 18, 2005. (R. at 156.)

In an undated Daily Activities Questionnaire, Farmer reported that she performed housework, including laundry, cleaning, ironing and cooking, as well as shopping twice a week. (R. at 61-67.) She stated that she was able to drive and that she performed necessary shopping, ate out once in a while, tried to attend church on Sundays and occasionally visited family and friends. (R. at 61.) Farmer reported that she needed no help going places and that she prepared four meals weekly with the help of her husband or daughter. (R. at 62.)

## *III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds

conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated October 27, 2005, the ALJ denied Farmer's claim. (R. at 14-20.) The ALJ found that Farmer last met the insured status requirements of the Act for DIB purposes on September 30, 2001, but not thereafter. (R. at 17.) She further found that Farmer had not engaged in substantial gainful activity at any time relevant to the decision. (R. at 17.) The ALJ found that Farmer suffered from a severe impairment, namely a history of back disorders, but she found that Farmer did not have an impairment or combination of impairments listed at, or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, through September 30, 2001. (R. at 17-18.) The ALJ found that Farmer had the residual functional capacity to perform light work diminished by an ability to frequently lift items weighing less than 10 pounds, a sit/stand option, an ability to occasionally bend, stoop, kneel, crouch and crawl and an inability to climb stairs or ladders. (R. at 18.) The ALJ further noted that, due to

the pain causing a mild reduction in Farmer's concentration, Farmer was limited to simple tasks. (R. at 18.) The ALJ found that the Farmer was able to perform her past relevant work as a cleaner and a home attendant. (R. at 19.) Thus, the ALJ found that Farmer was not under a disability as defined by the Act and was not eligible for benefits at any time through September 30, 2001, the date she was last insured. (R. at 20.) *See* 20 C.F.R. § 404.1520(f) (2006).

In her brief, Farmer argues that the ALJ erred in making her residual functional capacity determination, thereby concluding that Farmer could return to her past relevant work. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 7-9.) Based on my review of the record, I find that substantial evidence does not support the ALJ's decision that Farmer could perform her past relevant work.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Farmer argues that the ALJ erred in her residual functional capacity finding and

-11-

resulting conclusion that Farmer could return to her past relevant work. (Plaintiff's Brief at 7-9.) For the following reasons, I agree. The ALJ concluded that Farmer could not perform the full range of light work. Instead, the ALJ found that Farmer could perform light work diminished by an ability to frequently lift items weighing less than 10 pounds, a sit/stand option, an ability to occasionally bend, stoop, kneel, crouch and crawl and an inability to climb stairs or ladders. (R. at 18.) The ALJ further noted that, due to the pain causing a mild reduction in Farmer's concentration, Farmer was limited to simple tasks. (R. at 18.) I find that substantial evidence suggests this finding. Specifically, Dr. Hays, on June 22, 2001, found that Farmer could occasionally lift and/or carry objects weighing up to 20 pounds, frequently lift and/or carry objects weighing less than 10 pounds, stand and/or walk for at least two hours in an eight-hour workday and sit about six hours in an eight-hour workday. (R. at 196.) He opined that Farmer was limited in her ability to push and/or pull with her lower extremities. (R. at 196.) Dr. Hays further found that Farmer could frequently climb ramps and stairs and balance, occasionally stoop and kneel, but never climb ladders, ropes or scaffolds, crouch or crawl. (R. at 197.) He concluded that Farmer should avoid all exposure to hazards such as machinery and heights. (R. at 199.) Although Dr. Hays opined that Farmer retained the residual functional capacity for sedentary work, in fact his specific restrictions support the ALJ's finding. (R. at 200.)

In posing hypothetical questions to the vocational expert in an effort to determine whether Farmer could perform her past relevant work or other work that existed in significant numbers in the national economy, the ALJ asked only about an individual who could perform a diminished range of light work. (R. at 277-83.) In doing so, however, the ALJ did not state that the hypothetical individual could

-12-

frequently lift items weighing less than 10 pounds.  It is well-settled that in order for the testimony of a vocational expert to constitute substantial evidence for purposes of judicial review, his or her opinion must be based upon a consideration of all the evidence of record and must be in response to a proper hypothetical question which fairly sets out all of a claimant's impairments.  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  The determination of whether a hypothetical question fairly sets out all of a claimant's impairments turns on two issues: 1) is the ALJ's finding as to the claimant's residual functional capacity supported by substantial evidence; and 2) does the hypothetical adequately set forth the residual functional capacity as found by the ALJ?  The Commissioner may not rely upon an answer to a hypothetical question if the hypothesis fails to fit the facts.  *See Swaim v. Califano*, 599 F.2d 1309 (4th Cir. 1979).

I find that because none of the ALJ's hypotheticals to the vocational expert accurately conveyed the ALJ's finding as to Farmer's residual functional capacity, the vocational expert's testimony that Farmer could perform her past relevant work cannot constitute substantial evidence upon which the ALJ may rely in determining Farmer's residual functional capacity and resulting ability to work.  That being the case, I cannot find that substantial evidence supports the ALJ's finding that Farmer was not disabled between the time period from July 6, 2001, to September 30, 2001.

*IV. Conclusion*

For the foregoing reasons, the Commissioner's motion for summary judgment will be denied, the Commissioner's decision denying Farmer benefits will be vacated

and the case will be remanded to the ALJ for further consideration of Farmer's residual functional capacity and resulting ability to work.

An appropriate order will be entered.

DATED: This 22nd day of January 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-14-